UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ALEAH MEDINA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>VICTOR BOTELLO and MASTEC NORTH<br>AMERICA, INC.,<br><br>                    Defendants. | **4:20-CV-4114-LLP**<br><br>**MEMORANDUM OPINION AND ORDER<br>GRANTING MOTION FOR SUMMARY<br>JUDGMENT** |

Pending before the Court is Defendant, MasTec North America, Inc.'s ("MasTec"), Motion for Summary Judgment. (Doc. 14). For the following reasons, MasTec's Motion for Summary Judgment is granted.

## BACKGROUND

Victor Botello ("Botello") was hired by MasTec North America, Inc. ("MasTec") on June 15, 2020, as an unskilled laborer. (Docs. 15, ¶ 1; 21, ¶ 1; 20, ¶ 17; 24, ¶ 17). Botello's duties included digging holes with a shovel, looking for lines, feeding cable into the cable plow and other tasks that did not involve motorized equipment. (Docs. 20, ¶ 5; 24, ¶ 5; 19-5, Martin Dep. 32:13-33:18).

MasTec places construction crews on location all over the United States for an average time of five to six months and up to two years. (Docs. 20, ¶ 1; 24, ¶ 1). As part of the employment agreement, MasTec typically paid for transportation costs for employees on location to the job site and for occasional travel back to their hometowns. (Docs. 20, ¶ 2; 24, ¶ 2). MasTec provided its employees a per diem to live within the state. (Docs. 20, ¶ 3; 24, ¶ 3). Employees could live where they chose, but were given the option to live together in trailers owned by other MasTec employees. (Docs. 20, ¶ 19; 24, ¶ 19; 19-5, Martin Dep. 34:12-17; 19-4, Zurn Dep. 17:7-19).

Ivan Martin ("Martin"), the Operations Manager for MasTec, initially extended an oral offer of employment to Botello pending a background investigation. (Docs. 20, ¶¶ 6, 8; 24, ¶¶ 6, 8; 19-5, Martin Dep. 25:1-26:7). MasTec's human resources department conducts it background investigations and gives a pass or fail based upon the background check. (Docs. 20, ¶ 7; 24, ¶ 7).

1

Martin admitted that he does not actually see or review the background investigation reports and that Human Resources only gives him information about a pass or fail. (Docs. 20, ¶ 9; 24, ¶ 9) (Docs. 17-4, Martin Dep. 9:17-10:11; 19-5, Martin Dep. 9:17-10:11). Before MasTec hired him, Botello had been convicted of theft involving three motor vehicles and driving under the influence. (Docs. 20, ¶ 10; 24, ¶ 10). The background report obtained by MasTec indicated that Botello had two felony convictions for theft of property that occurred on or around June 2015, but failed to indicate that the convictions were for theft of motor vehicles, and another misdemeanor conviction for driving under the influence ("DUI") in June 2019. (Docs. 20, ¶ 11; 24, ¶ 11; 19-5, Martin Dep. 28:1-31:8; 19-6). Martin never saw or reviewed the background report and therefore did not know about or inquire further into these convictions before hiring Botello. (Docs. 20, ¶ 12; 24, ¶ 12; Martin Dep. 19-5, 28:1-31:8).

MasTec flew Botello to South Dakota from Texas, his state of residence. (Docs. 20, ¶¶ 17-18; 24, ¶¶ 17-18). Botello lived in a trailer owned by another MasTec employee in Nebraska near the work site which was located near Yankton, South Dakota. (Docs. 20, ¶¶ 22-23; 24, ¶¶ 22-23; 15, ¶ 15; 21, ¶ 15)). Botello reported for work in South Dakota on June 19, 2020. (Docs. 20, ¶ 18; 24, ¶ 18).

At the time he was hired to work at MasTec, and for the duration of his employment with MasTec, Botello did not have a driver's license and indicated on his employment application to MasTec that he was unlicensed. (Docs. 15, ¶ 2; 21, ¶ 2; 17-1, Botello Dep. 7:23-6:8:3). MasTec has a policy requiring employees who operate a company vehicle to be properly licensed. (Docs. 15, ¶ 4; ¶ 21, 4). MasTec also has a policy prohibiting authorized employees to allow an unauthorized individual to operate a company vehicle, with no exceptions. (Docs. 15, ¶ 14; 21, ¶ 14). Botello was solely hired as a laborer for MasTec, not as a driver, and was never assigned any driving duties throughout the course of his employment with MasTec. (Docs. 15, ¶¶ 5, 9; 21, ¶¶ 5, 9).

As part of his training, Botello was required to complete a test on the content of the company handbook, although Botello testified that he was never given a handbook and was only required to complete the test on the computer. (Docs. 15, ¶ 6; 21, ¶ 6). Botello also completed twenty-five safety courses, including a course titled "Safety Does Not Take a Holiday July 4th." (Docs. 15, ¶ 7; 21; ¶ 7). MasTec has a "no drive" list which is updated approximately once a week

and is communicated to supervisors. (Docs. 15, ¶ 8; 21, ¶ 8). Plaintiff disputes whether the "no drive" list was also communicated to employees. (Docs. 15, ¶ 8; 21, ¶ 8). Botello was on the "no drive' list for the entire duration of his employment. (Docs. 15, ¶ 9; 21, ¶ 9).

Botello's direct supervisor was Brad Zurn ("Zurn"). (Docs. 15, ¶ 10; 21, ¶ 10). Above Zurn in the chain of command was Steven Kuschel ("Kuschel"). (Docs. 15, ¶ 11, 21, ¶ 12). Above Kuschel in the chain of command was Ivan Martin ("Martin"). (Docs. 15, ¶ 12; 21, ¶ 12). Prior to the accident, Zurn and Kuschel both testified that they did not know about Botello's prior convictions. (Docs. 20, ¶¶ 14-15; 24, ¶¶ 14-15; 19-2, Kuschel Dep. 33:8-24; 19-4, Zurn Dep. 22:4-10). One time when Botello was off duty, he walked two miles to Kuschel's trailer in Nebraska and showed up intoxicated. (Docs. 20, ¶¶ 40, 48; 24, ¶¶ 40, 48; 19-2, Kuschel Dep. 55:23-56:24).

Botello remained around Yankton for the holiday weekend surrounding July 4, 2020. (Docs. 15, ¶ 16; 21, ¶ 16). MasTec paid for most employees' travel home for the holiday weekend either by vehicle or by plane. (Docs. 20, ¶ 26; 24, ¶ 26). MasTec did not fly Botello home for the holiday weekend because he just began work for the company weeks before. (Docs. 15, ¶ 16; 21, ¶ 16; 20, ¶ 27; 24, ¶ 27).

Prior to the holiday weekend, Zurn instructed MasTec employees to take Botello to the store so he could buy groceries for the weekend. (Doc. 15, ¶ 17; 21, ¶ 17). Aaron Dombkowski ("Sticks") took Botello to Walmart to buy food, but Botello testified that he had only $20 and bought a couple cans of soup. (Docs. 15, ¶ 18; 21, ¶ 18; 17-1, Botello Dep. 15:25-16:7). Kuschel told Botello that if he had to take a taxi somewhere over the holiday weekend, he would "make it right." (Docs. 15, ¶ 19; 21, ¶ 19).

Prior to the holiday weekend, company employees testified that Zurn instructed MasTec employees, including Sticks, Jesus Juan Rincon ("Danny"), and Phillip Fuller ("Phil"), to either lock their vehicles up or lock the keys to the vehicles up. (Docs. 15, ¶ 21; 21, ¶ 21). Kuschel testified that on the last day of work before the holiday that he gathered everyone together and told them "you all need to take your keys out of the vehicle and lock them up for the long holiday." (Docs. 15, ¶ 23; 21, ¶ 23; 19-2, Kuschel Dep. 36:21-37:14; 17-3, Kuschel Dep. 37:4-14). Kuschel also routinely instructs employees to secure their vehicles at the end of a workday. (Docs. 15, ¶ 22; 21, ¶ 22).

Botello testified that Phil, Sticks, and Danny all told him that they would leave their keys in their car "just in case [Botello] need[s] to use the truck . . . just to buy groceries and nothing else." (Docs. 17-1, Botello Dep. 13:13-15:21; 20, ¶ 41; 24, ¶ 41). Botello also testified that these employees told Botello that when his paycheck comes, he could "use a truck to buy groceries, or whatever [he is] going to do, and come back." (Doc. 19-1, Botello Dep. 43:11-17). Botello testified that all of the guys told him that if something wrong happens, it is going to be Botello's fault and that they were going to deny everything because they "don't want to get in trouble with the boss, Steve." (Docs. 17-1, Botello Dep. 15:17-21, 41:21-42:9; 19-1, Botello Dep. 43:17-19). Botello did not work on July 3, 2020, or July 4, 2020. (Docs. 15, ¶ 24; 21, ¶ 24). Botello testified that he waited until he was paid on Friday, July 3, 2020, and then took Danny's vehicle to the store around 10 a.m. to buy some groceries. (Doc. 17-1, Botello Dep. 16:5-24). Botello testified that Danny's vehicle was unlocked and that the keys were in the cup holder. (Doc. 17-1, Botello Dep. 16:25-17:20).

After returning from the grocery store, Botello spent the remainder of the day on the beach where he met some people who were not employees of MasTec who invited him out to a bar that evening. (Doc. 17-1, Botello Dep. 18:18-20:21). Botello's new acquaintances did not have enough room in their vehicle to accommodate Botello so he found Danny's keys in the cupholder of the unlocked truck and drove Danny's truck to the bar. (Doc. 17-1, Botello Dep. 19:25-20:25).

Botello had never previously driven a company vehicle before July 3, 2020. (Docs. 15, ¶ 27; 21, ¶ 27). Botello testified in his deposition various times that he knew he was not authorized to drive a MasTec vehicle (Doc. 17-1, Botello Dep. 11:16-25, 15:13-15, 29:3-6, 29:16-18, 30:13-15, 32:9-11), but that Phil, Sticks, and Danny had given him permission to use their vehicles while they were gone over the holiday weekend (Doc. 17-1, Botello Dep. 37:1-6). There is no evidence in the record that unauthorized and unlicensed drivers had previously driven MasTec vehicles and both Kuschel and Zurn testified that they had not been aware of situations in the past where MasTec employees had left their keys in their vehicles. (Docs. 19-2, Kuschel Dep. 39:4-7; 19-4, Zurn Dep. 28:22-25).

Botello was at the bar for approximately two or three hours where he consumed five or size 12 oz. bottles of Bud Light. (Docs. 15, ¶ 29; 21, ¶ 29). Botello realized he started "getting drunk" and ate some chicken strips at the bar so that he would not "blackout." (Docs. 15, ¶ 30; 21, ¶ 30).

4

Twenty minutes after eating, Botello left the bar in the late hours of July 3, 2020 or the early hours of July 4, 2020 by driving a company vehicle. (Docs. 15, ¶ 31; 21, ¶ 31). Botello was aware of the dangers of drinking and driving. (Docs. 15, ¶ 32; 21, ¶ 32). Botello was aware that MasTec policy prohibits driving company vehicles under the influence of alcohol. (Docs. 15, ¶ 33; 21, ¶ 33).

Botello got into a car accident with a vehicle driven by Aleah Medina. (Docs. 15, ¶ 34; 21, ¶ 34). Following the accident, Botello texted Zurn and admitted that he knew he "did something wrong" that he should not have done and wanted to know how he could fix it. (Docs. 15, ¶ 35; 21, ¶ 35). Botello pleaded guilty in Nebraska for using a vehicle without authorization resulting from his use of the company vehicle on or about July 4, 2020. (Docs. 15, ¶ 36; 21, ¶ 36). Botello also pleaded guilty in South Dakota for driving under the influence (second offense), reckless driving, and driving without headlights, resulting from his use of the company vehicle. (Docs. 15, ¶ 37; 21, ¶ 37). Botello testified that no one told him he had been fired from MasTec and that he figured it out a month later after not receiving a letter or response from them. (Docs. 15, ¶ 38; 21, ¶ 38).

Plaintiff alleges two causes of action against MasTec. In Count II of his Amended Complaint, Plaintiff alleges a claim of respondeat superior against Defendant MasTec North America, Inc. (Doc. 5). In Count III of his Amended Complaint, Plaintiff alleges that MasTec had a duty to Plaintiff to exercise reasonable care "in the carrying on of its business, in hiring, retaining, and supervising its employees." (Doc. 5, ¶ 20). Plaintiff alleges that MasTec recklessly and/or negligently breached the standard of care by: (a) hiring Botello as an employee when it knew or should have known of his propensity to commit driving offenses; (b) retaining Botello as an employee when it knew or should have known of his propensity to commit driving offenses; (c) failing to properly supervise Botello; (d) failing to exercise ordinary care and awareness in the management, maintenance and control of its fleet of vehicles, including a duty to ensure that its vehicles were not accessible to and used by unsafe and irresponsible drivers. (Doc. 5, ¶¶ 20(a)-(d). MasTec has moved for summary judgment on all claims alleged against it. The motion has been fully briefed and is ready for disposition. On March 21, 2022, the Court held oral argument on this motion.

**LEGAL STANDARD**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet this burden, the moving party must identify those portions of the record which demonstrate the absence of a genuine issue of material fact, or must show that the nonmoving party has failed to present evidence to support an element of the nonmovant's case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met this burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, the dispute must be outcome determinative under prevailing law." *Id.* at 910-11 (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)).

In ruling on a motion for summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion" for summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

### I.     Negligent Hiring and Retention Claim

Plaintiff argues that it was "negligent to hire [Botello] for this job and move him to South Dakota where he would not have a means to travel, where MasTec knew or should have known of his propensity to take a vehicle and drive while intoxicated." (Doc. 18 at 140). Plaintiff also argues that it was negligent to retain Botello after he showed up to his supervisor's home intoxicated. (Doc. 18 at 138).

MasTec moves for summary judgement on Botello's negligent hiring and retention claim. MasTec argues that Botello was hired for manual labor, not as a driver, and that Botello's job duties never included driving. (Doc. 16 at 60). MasTec states that Botello was on the "no-drive" list which was frequently communicated to employees and supervisors. (Doc. 16 at 60). Furthermore, MasTec argues that it cannot be liable for negligent hiring and retention because Botello was off-duty when he took the company vehicle. (Doc. 16 at 61).

### A. Negligent Hiring Claim

"The three elements necessary to support a finding of actionable negligence are a duty on the party of the defendant, a failure to perform that duty, and an injury to the plaintiff resulting from such failure." *Johnson v. Straight's, Inc.*, 288 N.W.2d 325, 327 (S.D. 1980). "A duty in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Hoekman v. Nelson*, 614 N.W.2d 821, 823 (S.D. 2000) (citation omitted). In order to maintain a negligence action and before a defendant can be found liable for negligence, a plaintiff must prove the existence of a duty of care on the part of a defendant to a plaintiff. *Barger for Wares v. Cox*, 372 N.W.2d 161, 167 (S.D. 1985).

Whether a duty exists depends on the foreseeability of injury. *Peterson v. Spink Elec. Co-op., Inc.*, 578 N.W.2d 589, 592 (S.D. 1998). "The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm . . . is unknown at the time of the act." *Id.* at 593, n6 (quoting 57A Am.Jur.2d *Negligence* § 83). "[N]o one is required to guard against or take measures to aver that which a reasonable person under the circumstances would not anticipate as likely to happen." *Id.* (quoting *Wildeboer v. S.D. Jr. Chamber of Commerce Inc.*, 561 N.W.2d 666, 669 (S.D. 1997)). Foreseeability is examined at the time the alleged negligent act occurred, not when the damage was done. *Id.* at 592. Typically, whether a defendant owes a duty to a plaintiff is a question of law and summary judgment is appropriate when the trial judge resolves the duty question in the defendant's favor. *Erickson v. Lavielle*, 368 N.W.2d 624, 627 (S.D. 1985).

"[A] negligent hiring claim suggests that at the time an employee was hired it was negligent for an employer to engage the employee's services based on what the employer knew or should have known about the employee." *Kirlin v. Halverson*, 758 N.W.2d 436, 452 (S.D. 2008). The concept of direct employer liability arising as a result of negligent hiring is recognized as the rule in South Dakota, *see id.*, and as the law by the Restatement (Second) Agency § 213 which states:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> . . .

7

> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others.

*Ponticas v. K.M.S. Investments*, 331 N.W.2d 907, 911 (Minn. 1983) (quoting Restatement (Second) of Agency § 213).  The South Dakota Supreme Court has looked to the Restatement (Second) Agency for guidance on many occasions. *See, e.g., Kirlin*, 758 N.W.2d at 445-46; *Hass v. Wentzlaff*, 816 N.W.2d 96, 104 (S.D. 2012); *Deuchar v. Foland Ranch, Inc.*, 410 N.W.2d 177, 180 (S.D. 1987).  In a negligent hiring claim,

> [l]iability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by a reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Ponticas*, 331 N.W.2d at 911.  The scope of the employer's duty of reasonable care in hiring an employee "focuses on the job duties for which the employee is being hired in relation to persons the employer would reasonably foresee the employee coming into contact with through the employment." *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1018-19 (Colo. 2006) (*en banc*); *see also Di Cosala v. Kay*, 450 A.2d 508, 518 (N.J. 1982) (stating that "the question presented is whether the employer, knowing of its employee's unfitness, incompetence or dangerous attributes when it hired or retained its employee, should have reasonably foreseen the likelihood that the employee through his employment would come into contact with members of the public, such as the plaintiff, under circumstances that would create a risk of danger to such persons because of the employee's qualities."); *McCormick v. W. Virginia Dep't of Pub. Safety*, 503 S.E.2d 502, 507 (W. Va. 1998) (citing *Ponticas*, 331 N.W.2d at 913) ("[A] primary question in determining whether an employer may be held liable based on a theory of negligent hiring or retention is the nature of the employee's job assignment, duties and responsibilities—with the employer's duty with respect to hiring or retaining an employee increasing, as the risk to third persons associated with a particular job increase.").  For example, the South Dakota Supreme Court has held that the duty of reasonable care in hiring does not require an employer to conduct a background investigation of a Pizza Hut employee who had minimal contact with the public. *See Iverson v. NPC Int'l, Inc.*, 801 N.W.2d 275, 280 (S.D. 2011).

In the present case, the Court concludes that as a matter of South Dakota law, MasTec did not owe Plaintiff a duty to exercise reasonable care hiring of Botello.  Botello was expected to

have virtually no contact with members of the public. Botello was hired and worked as a manual laborer and was responsible for tasks such as shoveling and laying lines. It is clear from the record that Botello was not hired as a driver and was not given any driving responsibilities while employed by MasTec. Botello was on MasTec's no-drive list and had never previously driven a MasTec vehicle while on (or off) duty. For these reasons, MasTec could not reasonably foresee that Botello would come into contact with Plaintiff through his employment so as to create a risk of danger to her given Botello's prior convictions for driving under the influence and theft of property.

### B. Negligent Retention

"A negligent retention claim alleges that information which the employer came to know, or should have become aware of, after hiring the employee made continued employment of the employee negligent." *Kirlin*, 758 N.W.2d at 452.

Plaintiff argues that MasTec was negligent in retaining Botello after he showed up intoxicated at Kuschel's trailer one day when he was off duty because, in light of Botello's prior DUI, it indicated that Botello continued to drink in excess. (Doc. 18 at 139).

The background report shows that Botello had been convicted of a DUI prior to his employment with MasTec, but there is no indication in the report that such conduct occurred in the workplace. The fact that Botello once drank to excess while off duty on the weekend on this job does not establish that it was foreseeable that retaining Botello in his position of employment with MasTec posed a foreseeable risk of injury to Plaintiff.

Important too, is the fact that public policy considerations weigh against imposing a duty of care upon MasTec in the hiring and retention of Botello based upon his prior limited criminal history. *See Kirlin*, 758 N.W.2d at 453 (citation omitted) ("Public policy is a major consideration in identifying a legal duty."). Botello's criminal history includes a single DUI conviction a year prior to his hiring by MasTec and there is no evidence that the DUI was committed during the course of any previous employment. Botello's background report also showed three previous convictions for theft of property that occurred over 5 years prior to his hiring by MasTec. This Court concludes, similar to the South Dakota Supreme Court in *Kirlin v. Halverson*, that:

> Requiring employers to fire employees or face liability under these circumstances is untenable, especially considering [Botello's] minimal contact with others. "Such a rule would deter employers from hiring workers with a criminal record and 'offend our civilized concept that society must make a reasonable effort to rehabilitate those who have erred so they can be assimilated into the community.'"

758 N.W.2d at 454 (citation omitted); *see also Ponticas*, 331 N.W.2d at 913 ("Were we to hold that an employer can never hire a person with a criminal record at the risk of later being held liable for the employee's assault, it would offend our civilized concept that society must make a reasonable effort to rehabilitate those who have erred so they can be assimilated into the community."). There is no evidence in the record that Botello's off-duty drinking one year ago and being drunk off duty once on this job created a duty that MasTec violated in the retention of Botello.

## II.    Negligent Supervision Claim

Plaintiff argues that MasTec was negligent in its supervision of Botello and other MasTec employees entrusted with company vehicles. (Doc. 18 at 135). With regard to MasTec's duty to supervise employees other than Botello, Plaintiff argues that MasTec had a duty to ensure that these employees secured their company vehicles over the holiday weekend so that they were inaccessible to unauthorized drivers. (Doc. 18 at 137). "[N]egligent supervision [requires] that the employer failed to exercise reasonable care in supervising (managing, directing, or overseeing) its employees as to prevent harm to other employees or third persons." *Total Auctions & Real Estate, LLC v. S.D. Dept. of Revenue & Reg.*, 888 N.W.2d 577, 582 (S.D. 2016) (quoting *Iverson*, 801 N.W.2d at 282). "Failing to 'prevent harm' necessarily assumes an underlying wrong; i.e. the commission of a tort by an employee. Thus, a negligent supervision claim requires that an employee commit an underlying tort." *Id.* (citing *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999) ("[A]n employer cannot be held liable for negligent supervision . . . where the conduct that proper supervision and training would have avoided is not actionable against the employee."); *Schieffer v. Catholic Archdiocese of Omaha*, 508 N.W.2d 907, 913 (Neb. 1993) ("[A]n underlying requirement in actions for negligent supervision . . . is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer.")). Plaintiff has failed to allege or cite any facts in the record suggesting that employees other than Botello were guilty of committing an underlying tort or claimed wrong against Plaintiff. *See Total Auctions & Real Estate*, 888 N.W.2d at 582 ("Because

[plaintiff's] complaint fails to state an actionable tort claim against [the employee], it also fails to state a claim against [the employer] for negligent supervision."); *Schieffer*, 508 N.W.2d at 913 ("If there is no tort liability to the plaintiff against [the employee] individually, it follows that [the employer] cannot be held liable for his conduct.")).  The Court will therefore confine its analysis to Plaintiff's claim alleging negligent supervision of Botello.

Generally, one owes no duty to prevent the misconduct of a third party.  *McGuire v. Curry*, 766 N.W.2d 501, 508 (S.D. 2018).  However, when the injury is foreseeable a duty may exist where not otherwise recognized.  *Id.*  Foreseeability in the duty sense is examined at the time of the alleged negligence, not at the time injury occurred.  *Id.*  "The duty to foresee a risk of harm is dependent upon all the surrounding facts and circumstances and may require further investigation or inquiry before action is taken."  *Iverson v. NPC Int'l, Inc.*, 801 N.W.2d 275, 282 (S.D. 2011) (quoting *Ward v. LaCreek Elec. Ass'n*, 163 N.W.2d 344, 346 (S.D. 1968)).

> Liability is not contingent upon foreseeability of the "extent of the harm or the manner in which it occurred."  This means the *exact harm* need not be foreseeable.  Rather, the harm need only be *within the class* of reasonably foreseeable hazards that the duty exists to prevent.

*Id.* (quoting *State Auto Ins. Co. v. B.N.C.*, 702 N.W.2d 379, 388-89 (S.D. 2005)).  Foreseeability in defining the boundaries of a duty is always a question law.  *Smith ex rel. Ross v. Lagow Constr. & Dev. Co.,* 642 N.W.2d 187, 192 (S.D. 2002).

Plaintiff argues that MasTec had a duty to supervise Botello over the holiday weekend to make sure he did not drive a company vehicle.  (Doc. 18 at 136).  Plaintiff argues that MasTec was aware that Botello did not have a driver's license, that he had no means of transportation over the holiday weekend, and that it was therefore foreseeable, especially considering Botello's prior theft of property and DUI convictions, that he would use a company vehicle for transportation.  (Doc. 18 at 136).  Plaintiff argues that MasTec had a duty to ensure that Botello had a means of transportation by providing funds and contact information for a commercial driver.  (Doc. 18 at 136).

MasTec moves for summary judgment on Botello's negligent supervision claim.  MasTec argues that no reasonable jury could find that MasTec had a duty to prevent Botello's alleged

misconduct because Plaintiff's injury was not foreseeable under the totality of circumstances. (Doc. 16 at 61-62).  MasTec contends:

> [I]t was not foreseeable under the totality of the circumstances that Botello, who was off-duty and expressly told he was not to drive company vehicles and was put on a no-drive list because he had no driver's license, would gain access to and steal a company vehicle for his own pleasure after management repeatedly instructed employees to lock company keys in their home before leaving for the holiday vacation. It was not foreseeable that Botello would then take the company vehicle to the bar, become intoxicated, and drive home and injure a third-party in blatant violation of company policy.

(Doc. 16 at 62).  MasTec argues further that even if Plaintiff establishes a legal duty, no reasonable jury could find that MasTec breached said duty.  (Doc. 16 at 62-63).  In addition, MasTec argues that Botello's theft of the vehicle and decision to drink and drive constitute a superseding cause to cut off any liability of MasTec.  (Doc. 16 at 63).

Instructive on the issue of foreseeability is the South Dakota Supreme Court's decision in *Iverson v. NPC International, Inc.*, 801 N.W.2d 275 (S.D. 2011), *Kirlin v. Halverson*, 758 N.W.2d 436 (S.D. 2008), and *McGuire v. Curry*, 766 N.W.2d 501 (S.D. 2009).

In *McGuire v. Curry*, a racetrack ("Speedway") hired an underage employee ("Curry") to "run" beer, hard liquor and other items to the concessions on Speedway's property.  766 N.W.2d at 509.  Curry had a key to the company's liquor and alcohol storage facility.  *Id.*  Underage, Curry became aware that no one monitored him or the company's alcohol supply.  *Id.*  Shortly after beginning his employment, Curry started drinking while on the job.  *Id.*  One day, after Curry's shift ended, he drove his vehicle off the premises and struck and injured the plaintiff who was a passenger on a motorcycle.  *Id.* at 504.  The South Dakota Supreme Court concluded that the Speedway had a duty to supervise Curry because "[i]t was foreseeable to an ordinary reasonable person that by not supervising an underage employee afforded free reign to consume alcohol while at work, that the employee could abuse the alcohol, leave the premises after work unfit to drive, and injure a member of the general public."  *Id.* at 509.

The South Dakota Supreme Court summarized the facts of the *Kirlin* case as follows,

> In *Kirlin*, two competing businesses, Empire HVAC and Carrier Commercial Services, had employees working on the roof of the Empire Mall in Sioux Falls, South Dakota. The Empire Mall terminated its maintenance contract with Empire HVAC and replaced it with Carrier. In the transition, employees from both businesses were on the roof together. Words were exchanged, and the Empire Mall's manager was called to diffuse the situation. The next day, the same Carrier employee and a different Empire HVAC employee were working on the roof at the same time on separate tasks. Hostility between the two immediately arose. A dispute erupted about whether the Carrier employee could use a filter that belonged to Empire HVAC. Words were again exchanged, resulting in a skirmish. The Empire HVAC employee then beat and kicked the Carrier employee into unconsciousness. This Court ultimately concluded that a duty existed under a negligent supervision claim because the possibility that a dispute could arise based on the previous day's altercation was foreseeable, and because Empire HVAC had not acted reasonably in advising its employee of the potential for conflict.

*Iverson*, 801 N.W.2d at 283 (summarizing *Kirlin*). The court in *Kirlin* acknowledged that prior to the assault, the Empire HVAC employee had once been convicted of resisting arrest and sentenced to one year jail time, but noted that this history of violence resulted from a domestic, and not a workplace confrontation. *Id.* at 453.

In *Iverson*, Williams, a utility worker employed by Pizza Hut, assaulted Iverson, a former employee of Pizza Hut, on restaurant premises. *Id.* at 277-78. Williams and Iverson had worked together at Pizza Hut until Iverson's termination and remained friends after the termination. *Id.* While working at Pizza Hut, Williams phoned Iverson and asked him to come to Pizza Hut to return a CD he had borrowed. *Id.* at 278. When Iverson arrived, Williams directed him past the manager to the back of the restaurant to Williams's work station. *Id.* Williams then pressed Iverson against the wall and demanded money from him that Williams believed he was owed. *Id.* When Iverson refused, Williams struck Iverson with an open-handed uppercut punch to the chin and jaw, breaking his jaw in three places. *Id.*

Iverson sued Pizza Hut for injuries he sustained from the assault by Williams. In his claim for negligent supervision, the plaintiff argued that it was negligent for the manager to allow Iverson to be in the back of the Pizza Hut with Williams. *Id.* at 284. The court disagreed, finding that at the time Iverson was injured, it was not foreseeable that Williams would attack Iverson. *Id.* The court summarized *McGuire* and *Kirlin*, by saying,

> In *McGuire*, the employee's age and access to alcohol warranted imposing a duty because it was foreseeable that harm could result. In *Kirlin*, conflict existed

13

> between the businesses' employees on consecutive days, the employees were
> working in the same small area, and the environment was hostile. As a result, it
> was sufficiently foreseeable that some harm would follow.

*Id.* at 283. The Court stated that unlike in *McGuire* and *Kirlin*, based on the surrounding facts and circumstances, the employee's attack upon the plaintiff was not "within the class of reasonably foreseeable hazards." *Id.* at 282 (quoting *Kirlin*, 758 N.W.2d at 450). The court reasoned that except for William's "parole status for a violent, gang-related felony," there was no evidence that the employee ever displayed violent tendencies while employed at Pizza Hut, but rather, was considered a model employee. *Id.* The court noted also that when the plaintiff was employed with Pizza Hut, he and the employee defendant had worked peacefully together and remained friends after Iverson was fired. *Id.* Accordingly, the Court affirmed summary judgment on Iverson's negligent supervision claim. *Id.* at 284.

In *McGuire*, *Kirlin* and *Iverson*, the South Dakota Supreme Court analyzed the employer's duty to supervise an employee while the employee was on duty and on workplace premises. In *McGuire*, although the tortious conduct of the employee that was the cause of the plaintiff's injuries (driving while intoxicated) occurred while the employee was off duty, the court had found that the employer's negligence stemmed from its supervision of the employee while he was on duty and on the premises of the workplace. The employee was underaged and not legally permitted to consume alcohol and was hired as a "runner" to deliver alcohol and other supplies to concession stands and bars. *Id.* at 505. The employee was given a key to the liquor cabinet and neither the alcohol supply nor the underage employee's activities were monitored by the employer. *Id.* at 509. The South Dakota Supreme Court held that the employer had a duty to supervise the employee at work because of the employee's age and free access to the company's alcoholic beverages while on duty. *Id.* ("It was foreseeable to an ordinary reasonable person that by not supervising an underage employee afforded free reign to consume alcohol while at work, that the employee could abuse the alcohol, leave the premises after work unfit to drive, and injure a member of the general public.").

Here, by contrast, Plaintiff argues that MasTec had a duty to supervise Botello over the long holiday weekend while he was off duty and off the jobsite. Plaintiff argues that MasTec was aware that Botello did not have a driver's license and had no means of transportation over the long weekend and that all other MasTec employees working at the job site would be away that weekend.

(Doc. 18 at 136).  Plaintiff argues that MasTec had a duty to ensure that Botello had either money for transportation during the holiday weekend or the phone number of a commercial driver.  (Doc. 18 at 136).

Plaintiff points to no South Dakota cases that have imposed a duty to supervise an employee while the employee is off duty and off workplace premises.  Even if an employer may be charged with a duty to supervise an employee under such circumstances, the Court finds that Botello's prior limited criminal conduct did not render Botello's conduct in this case foreseeable. In *Iverson*, and *Kirlin*, the South Dakota Supreme Court found that a limited history of violence by the employee outside the workplace did not, in and of itself, render the employee's violence inside the workplace foreseeable.   In *Iverson*, the court held that the Pizza Hut employee's prior gang-related felony was insufficient to place his manager on notice that he, an otherwise model employee, would assault a former employee while on duty with whom he had remained on friendly terms.  In *Kirlin*, the court found that it was not the employee's prior conviction for assault and resisting arrest outside of the workplace that made his workplace assault foreseeable, but rather the previous day's altercation and the fact that the parties would continue to work in close proximity to one another the day of the assault.

Reviewing the results of MasTec's background investigation of Botello, the Court finds that the investigation report details that Botello had pleaded guilty to three counts of "Theft of Property $20000 to $100000" for offenses that occurred approximately 5 years prior to Botello's hiring by MasTec. (Doc. 19-6 at 498).  There is no evidence that MasTec had any knowledge that Botello's felony convictions were for theft of vehicles or that he was unlicensed when he received his previous DUI, and MasTec had no duty to inquire further into Botello's prior criminal conduct given that his job duties as a laborer brought him into virtually no contact with the public. Additionally, similar to the individual defendants in *Kirlin* and *Iverson*, there is no evidence that Botello's prior criminal conduct was committed during the scope of any previous employment.

There is no evidence that Botello had violated any other company policies or was otherwise negligent in the performance of his job duties during his time with MasTec.  Both Kuschel and Zurn testified that Botello had been performing his job duties well.  (Doc. 17-3, Kuschel Dep. 54:15-55:9; 19-4, Zurn Dep. 46:3-11).  Zurn testified that Botello was a "good" worker, that he showed up every single day, worked hard all day, was a "good kid," and had not given him any

problems prior to the accident.  (Doc. 19-4, 46:53-11).  Although Botello was to remain in Nebraska over the holiday weekend while the other employees went home, employees were instructed to and did take Botello to the store prior to the holiday weekend so that he could buy groceries.  Botello was also told that if he needed to go anywhere, he could take a taxi and that MasTec would "make it right."  There is no evidence that Botello had been driving any vehicle, let alone a MasTec vehicle, since he arrived in South Dakota to begin his work with MasTec. Although Kuschel testified that Botello had shown up at his trailer drunk off duty on the weekend, Botello had not driven there, but walked the approximately two-mile distance.  MasTec had a policy that prohibited unauthorized and unlicensed drivers from driving company vehicles. MasTec knew that Botello was unlicensed and had placed him on the company's no-drive list. Botello himself admitted that he had not previously driven a MasTec vehicle.  Botello's coworkers were instructed at least two times to secure their vehicles or the keys to their vehicles over the long weekend and both Kuschel and Zurn testified that to their knowledge, keys had never been left in unlocked MasTec vehicles previously.  (Docs. 19-4, Zurn Dep. 28:21-25 ("We tell [employees] to lock the keys [to the vehicles] up, they lock the keys up.  It's never been a problem in the past."), 43:16-20 (testifying that Danny, Sticks and Phil "have been multi-year employees," have worked with MasTec for a long time and testifying that he "can't believe" that they would tell Botello he could use their vehicles over the holiday weekend); 19-2, Kuschel Dep. 39:4-7).  There is no evidence in the record that other employees on the no-drive list had previously driven MasTec vehicles either while on or off duty.  Considering the totality of the circumstances, Botello's alleged tortious conduct was not within the class of reasonably foreseeable hazards from which MasTec had a duty to protect Plaintiff.  Summary judgment is therefore granted in favor of MasTec as to Plaintiff's negligent supervision claim.

### III.     Vicarious Liability

#### A.  Overview – Respondeat Superior

"The doctrine of respondeat superior 'hold[s] an employer or principal [vicariously] liable for the employee's or agent's wrongful acts committed within the scope of employment or agency.'"  *Hass v. Wentzlaff*, 816 N.W.2d 96, 102-03 (S.D. 2012) (citation omitted); *see also Cameron v. Osler*, 930 N.W.2d 661, 666 (S.D. 2019) (citation omitted) ("The employer's vicarious liability 'is a function of status and stems entirely from the tortious conduct of the [employee], not from any tortious conduct by the [employer].'").

### B. Vicarious liability for Botello's Actions

MasTec moves the Court for summary judgment on Botello's respondeat superior claim. MasTec argues that, as a matter of law, Botello was acting outside his scope of employment when he went to a bar when he was off-duty.

Plaintiff does not appear to dispute that Botello was acting outside his scope of employment and solely to serve his own interests. (Doc. 18 at 145). However, Plaintiff contends that MasTec may be held liable under an exception to vicarious liability for servants acting outside the scope of their employment. Specifically, Plaintiff argues that MasTec is liable under the "aided by agency" theory of liability which is articulated in subsection (2)(d) of section 219 of the Restatement (Second) of Agency as follows:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> . . .
>
> (d) . . . [the servant] was aided in accomplishing the tort by the existence of the agency relation.

Restatement (Second) of Agency, § 219. Plaintiff argues that MasTec is vicariously liable for Botello's tortious conduct under the aided by agency theory of liability because "[Botello's] position with MasTec gave him access to a fleet of vehicles that he otherwise would not have had." (Doc. 18 at 146).

It appears that the South Dakota Supreme Court has acknowledged that § 219(2)(b) may be used to impose liability upon an employer for common law torts committed by an employee outside the scope of his employment. In *Hass v. Wentzlaff*, the South Dakota Supreme Court stated that in *Iverson v. NPC Int'l, Inc.*, 801 N.W.2d at 279, it "acknowledged Restatement (Second) of Agency § 219(2)(d) . . . but concluded under the facts in *Iverson*, that 'the agency relationship was immaterial to [the agent's] tort.'" 816 N.W.2d 96, 107 n7 (S.D. 2012).

The Court here incorporates its above discussion of the facts of *Iverson*. In addition to other claims, Iverson had argued that Pizza Hut was vicariously liable for Williams's assault of Iverson on the theory that Williams's agency relationship with Pizza Hut "aided him in accomplishing the tort." *Id.* at 279 (quoting Restatement (Second) of Agency, § 219(2)). The court stated that in cases where liability has attached to the employer, it was because the

17

tortfeasor's employment enabled or endowed him "with a unique advantage to perpetrate the tortious acts." *Id.* The court noted one example cited in the Restatement of a telegraph operator who sent a telegram purporting to be a person known to the recipient, and asking the recipient to send money. *Id.* The example provided that if the money is sent and the telegraph operator absconds with it, the principal is subject to liability for the amount stolen. *Id.* The court also noted *Costos v Coconut Island Corp.*, 137 F.3d 46 (1st Cir. 1998), where a hotel manager used his "manager's key" to enter a woman's room and rape her. *Id.* The court acknowledged that in that circumstance, the hotel could be liable for the manager's acts. *Id.*

> Analyzing the two examples, the court in *Iverson* stated:

> In both examples, the employment position and equipment enabled the tortfeasor to accomplish the act. The telegraph operator was able to commit his tort because of access to specialized equipment and a position that enabled him to deceive his victim. Absent the equipment and position, he would not have been able to achieve his desired end. Similarly, the hotel manager's position afforded him access to the hotel's keys and allowed him to learn the location of his victim and to take advantage of her while she slept.

*Id.* at 279. The court in *Iverson* found those examples to be distinguishable from the facts in the case. The court stated that,

> The mere fact that the assault took place on Pizza Hut property was not enough to make Pizza Hut liable under the doctrine of respondeat superior. Under these facts, the agency relationship was immaterial to Williams's tort. Williams could have accomplished his tort in any number of public or private buildings.

*Id.*

In the present case, Plaintiff argues that MasTec is vicariously liable for Botello's tortious conduct because "[Botello's] position with MasTec gave him access to a fleet of vehicles that he otherwise would not have had." (Doc. 18 at 146). In order to be liable under Restatement § 219(b), the servant must be "aided in accomplishing the tort by the existence of the agency relation." *Iverson*, 801 N.W.2d at 279 (quoting § 219(2)). It is not only the equipment, but also the employment position that must enable the tortfeasor to accomplish the act. *Id.* In *Iverson*, the South Dakota Supreme Court noted that in the telegraph operator example, "absent the equipment and position, he would not have been able to advance his desired end." *Id.* The *Iverson* court also noted that in *Costas*, "the hotel manager's position afforded him access to the hotel's keys and

allowed him to learn the location of his victim and to take advantage of her while she slept." *Id.*
In *York v. Karbah*, Civ. No. 20-3669, 2021 WL 5998390 (D.D.C. Dec. 19, 2021), the court noted
that in *Buie v. District of Columbia*, 273 F.Supp.3d 65 (D.D.C. 2017), vicarious liability was
imposed upon the employer because the alleged sexual assault by a police officer "was
accomplished by the use of the instrumentalities associated with the officer's official position"
because he was wearing his full police uniform and armed at the time of the assault, he transported
the plaintiff to the department using an official police vehicle, and used his police credentials to
access headquarters, where he committed the assault. 2021 WL 5998390 at *7 (citing *Buie*, 273
F.Supp.3d at 68-69); *see also Orduno v. Pietrzak*, 932 F.3d 710, 718 (8th Cir. 2019) (affirming the
district court's decision allowing vicarious liability because the police chief "used a government-
issued computer and official credentials to obtain Orduno's private information, and he could not
have done so but for his official position.").

The Court finds the facts of this case to be distinguishable from the examples cited above
wherein the employer was found vicariously liable for its employee's torts outside the scope of
employment. Unlike the telephone operator, the hotel manager, the police officers who committed
torts through use of instrumentalities associated with their official positions, no reasonable
inference can be made that Botello's use of the MasTec vehicle was associated with his official
position with company. Botello testified throughout his deposition that he knew when he was
hired that he was not authorized to drive MasTec vehicles as he was unlicensed. Botello also
testified that he understood from Danny and the other employees who allegedly gave Botello
permission to use their MasTec vehicles that they would deny everything if anything happened
while Botello was driving a MasTec vehicle over the holiday weekend so that they would not get
in trouble with their boss. Moreover, according to Botello, the vehicles were accessible to anyone
since they were unlocked with the keys in the cupholder or door. No reasonable inference can be
made that Botello's position with MasTec "enabled or endowed him with a unique advantage to
perpetrate the tortious acts." *Iverson*, 801 N.W.2d at 270. Summary judgment is therefore granted
in favor of MasTec on Plaintiff's claim that MasTec is vicariously liable for Botello's conduct.

### C. Vicarious liability for Danny's Actions

Plaintiff also argues that MasTec is vicariously liable for Danny's negligent conduct in
leaving the keys in the vehicle and allowing Botello to drive. (Doc. 18 at 147).

The Court concludes that this is a new theory of liability that is not properly before the court. *Sage as Trustee for Sage v. Bridgestone Americas Tire Op., LLC*, 514 F.Supp.3d 1081, 1086 (D. Minn. 2021). "In considering a summary judgment motion, the court may 'disregard[ ] a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard.'" *Id.* at 1086-87 (quoting *Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 878 (8th Cir. 2020)) (quoting *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016)); *Katsev v. Coleman*, 530 F.2d 176, 179-80 (8th Cir. 1976) (holding that a court does not need to consider a claim without foundation in the complaint on summary judgment motion)).

The Court finds that Plaintiff's Amended Complaint does not give MasTec fair notice that it is seeking to hold MasTec vicariously liable for Danny's negligence or that of employees other than Botello. In Plaintiff's respondeat superior claim in Count II of the Amended Complaint, Plaintiff alleges that Botello was acting within the scope of his employment, that his collision with Plaintiff was reasonably foreseeable, and therefore imputable to MasTec under the doctrine of respondeat superior. (Doc. 5, ¶¶ 15-18). In Plaintiff's respondeat superior claim, she does not allege that MasTec is vicariously liable for the negligence of employees other than Botello. In Count III of the Amended Complaint, Plaintiff alleges a direct negligence claim against MasTec. (Doc. 5, ¶¶ 19-24). Specifically, Plaintiff alleges that MasTec owed her a duty to exercise reasonable care in the carrying on of its business, in hiring, retaining, and supervising its employees. (Doc. 5, ¶ 20). Plaintiff alleges that MasTec breached this duty, in part, by failing to exercise ordinary care and awareness in the management, maintenance and control of its fleet of vehicles, including a duty to ensure that its vehicles were not accessible to and used by unsafe and irresponsible drivers. (Doc. 5, ¶ 21(d)). Courts have acknowledged that direct and vicarious theories of liability are distinct legal concepts. *See Pitt-Hart v. Sanford USD Med. Center*, 878 N.W.2d 406, 410-11 (S.D. 2016); *Kirlin v. Halverson*, 758 N.W.2d 436, 451-52 (S.D. 2008) (stating that the general duty of care concerns [the employer's] duty to conduct *itself* reasonably"); *Brown v. Thompson*, Civ. No., 2009 WL 10711896, at *3 (D. Minn. 2009) (citation omitted) ("Negligent employment theories are distinct from the doctrine of respondeat superior."). An employer's vicarious liability stems entirely from the tortious conduct of the employee; it is the negligence of the servant that is imputed to the master. *Cameron v. Osler*, 930 N.W.2d 661, 666 (S.D. 2019). By contrast, an employer's general duty of care concerns its duty to conduct itself reasonably. *Kirlin*, 758 N.W.2d at 451-52; *see also Brown*, 2009 WL 109711896, at *3

("[N]egligent employment theories impose directly liability only where the injuries are the result of the employer's failure to take reasonable precautions."). The allegations in the Amended Complaint are insufficient to place MasTec on notice that it seeks to hold MasTec vicariously liable for the negligence of employees other than Botello. Count II seeks to hold MasTec vicariously liable for Botello's actions. In Count III, Plaintiff alleges that her injuries were directly and proximately caused by MasTec's own recklessness and/or negligence in failing to secure its fleet of vehicles (not the negligence of Danny and other employees). (Doc. 5, ¶ 22). Nowhere else in the Amended Complaint does Plaintiff allege that Danny or other employees were negligent.

## IV.   Duty to Control Claim

In her brief, Plaintiff argues that MasTec owed a duty under Restatement (Second) of Torts § 317, which has been adopted by South Dakota courts, to prevent Botello's misconduct and to prevent Danny's misconduct in leaving the keys in the vehicle for Botello to drive. (Doc. 18 at 140).

### A. Failure to Allege Claim for Duty to Control

MasTec argues that Plaintiff has failed to allege a claim for breach of duty to control claim. This Court agrees.

In the Amended Complaint, Plaintiff alleges that "MasTec owed a duty to the Plaintiff to exercise reasonable care in the carrying on of its business, in hiring, retaining and supervising its employees." (Doc. 5, ¶ 20). Plaintiff further alleges that MasTec breached its duty to the Plaintiff by: 1) hiring Botello as an employee when it knew or should have known of his propensity to commit driving offenses; 2) retaining Defendant Botello as an employee, when it knew or should have known of his propensity to commit driving offenses; (3) failing to properly supervise its employee, Defendant Botello; and (4) failing to exercise ordinary care and awareness in the management, maintenance and control of its fleet of vehicles, including a duty to ensure that its vehicles were not accessible to and used by unsafe and irresponsible drivers. (Doc 5, ¶ 21).

Although Plaintiff alleges that MasTec failed to properly supervise Botello, the South Dakota Supreme Court has said that a claim for negligent supervision and a claim for breach of duty to control are separate causes of action. *Iverson v. NPC Int'l, Inc.*, 801 N.W.2d at 282

("Although there is some overlap between [a negligent supervision] cause of action and the duty to control theory, they are separate causes of action."); *see also McGuire v. Curry*, 766 N.W.2d 501, 508 (S.D. 2009) ("[A] claim for negligent supervision is separate from a claim that an employer breached its duty to control its employee based on Restatement § 317."). The court explained in *McGuire* that:

> "[A] negligent supervision claim alleges that the employer inadequately or defectively *managed, directed or oversaw* its employees." The Restatement, § 317, on the other hand, implicates an employer's duty to control employees when the employees are acting outside the scope of employment. While both a negligent supervision claim and a Restatement § 317 claim might involve conduct outside the scope of employment, a negligent supervision claim implicates more than the employer's duty to control the employee. A claim of negligent supervision avers that the employer failed to exercise reasonable care in supervising (managing, directing, or overseeing) its employees so as to prevent harm to other employees or third persons. A duty to control, in contrast, examines whether the employee caused harm while using a chattel of the employer or while on the premises of the employee, which conduct the employer could and should control.

*McGuire v. Curry*, 766 N.W.2d at 508.

Plaintiff also alleges that MasTec has a general duty of care when carrying out its business and that MasTec breached this duty by "failing to exercise ordinary care and awareness in the management, maintenance and control of its fleet of vehicles, including a duty to ensure that its vehicles were not accessible to and used by unsafe and irresponsible drivers." (Doc. 5, ¶ 21(d)). However, the South Dakota Supreme Court has distinguished between a general duty of care and a duty to control claim. In *Kirlin*, the Court stated that "the duty of control concerns [the employer's] handling of its special relationship with [its employee]; the general duty concerns [the employer's] duty to conduct *itself* reasonably." *Id.* at 451-52.

The Court finds that the allegations in the Amended Complaint do not put MasTec on notice that it is alleging a claim for breach of duty to control Botello. The Court concludes, therefore, that Plaintiff has failed to allege a claim for breach of duty to control Botello and other MasTec employees. Plaintiff may not amend her complaint in her brief. *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

### B. Alternative Holding

In the event that Plaintiff has stated a claim for duty to control Botello, the Court finds that such claim fails as a matter of law.

Tort liability depends upon the existence and breach of [a] duty . . . ." *Koenig v. London*, 968 N.W.2d 646, 653 (S.D. 2021) (citation omitted). "The existence of a duty is a threshold issue in any case of tort liability. Whether a duty exists is a matter of law for the court to determine." *Id.*

Generally, there is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless 1) there is a special relationship between the parties and 2) the third party's injurious act was foreseeable. *Kirlin*, 758 N.W.2d at 448-49 (S.D. 2008); *see also Bernie v. Catholic Diocese of Sioux Falls*, 821 N.W.2d 232, 240 (S.D. 2012) (quoting *Kirlin*, 758 N.W.2d at 449). A plaintiff may satisfy the special relationship prong by demonstrating either a "special relation . . . between the [defendant] and the third person which imposes a duty upon the [defendant] to control the third person's conduct," or a "special relationship . . . between the [defendant] and the [plaintiff] which gives to the [plaintiff] a right to protection." *Kirlin*, 758 N.W.2d at 449 (quoting Restatement (Second) of Tort § 315 (1965)). The relationships which require the actor to control the third person's conduct are stated in §§ 316-319. *Id.*; *Pursley for Benefit of Clark v. Ford Motor Co.*, 462 N.E.2d 247, 250 (Ind. Ct. App. 1984) (citing comment (c) to Restatement (Second) of Torts, § 315). Those relationships are parent-child (§ 316), master-servant (§ 317), land possessor-licensee (§ 318), and custodian of a person with dangerous propensities (§ 319). *Pursley*, 462 N.E.2d at 250.

The Supreme Court of South Dakota has adopted Restatement (Second) of Torts, Section § 317, *Duty of Master to Control Conduct of Servant*, which states:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if
>
> (a) the servant
>
>     (i)  is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
>     (ii) is using a chattel of the master, and
>
> (b) the master

(i)  knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

*Kirlin*, 758 N.W.2d at 449 (citing Restatement (Second) Torts, Section § 317).

The Court must now determine whether § 317 imposes a duty upon MasTec to control Botello while he was acting outside the scope of his employment.  It is undisputed that a special relationship existed between Botello and MasTec (that of master and servant).  It is also undisputed that that the incident at issue in this case took place outside the master's premises on public roads.

"The master is under no peculiar duty to control the conduct of his servant while he is outside the master's premises, unless the servant is at the time using a chattel entrusted to him as servant."  Restatement (Second) of Torts, Section 317, cmt b.  The Court concludes that no reasonable inference can be made from the facts that Danny and Botello's other co-workers entrusted their vehicles to Botello as a servant to do work on behalf of MasTec.  *See* Restatement (Second) of Agency § 241 ("If the servant surrenders custody of an instrumentality in order that a private purpose of his own or of the one to whom he gives custody can be accomplished by its use, the master is not liable for subsequent injuries.").  Here, Botello testified that Danny, Sticks, and Phil each gave Botello permission to use their vehicles to get groceries over the long weekend while he was off duty, not to perform any work on behalf of MasTec.  Botello was not even getting groceries, but drove to a bar, drank, got drunk, and drove again with his headlights off.

### 1.  Ability to Control Servant

As stated above, the Court finds that no reasonable inference may be made from the facts that MasTec entrusted Botello with a company vehicle to perform work on behalf of MasTec.  However, South Dakota courts have held that the ability to control can be satisfied by the mere power to threaten dismissal.  *Kirlin*, 758 N.W.2d at 450.  But, "[t]he ability to control arises from or is incident to the employer's general duties."  *Kirlin*, 758 N.W.2d at 450.  Accordingly,

A master is required to police his own premises, and those upon which, though in the possession of another, he has a privilege of entry for himself and his servants, to the extent of using reasonable care to exercise his authority as a master in order to prevent his servant from doing harm to others. So too, *he is required to exercise his authority as master to prevent them from misusing chattels which he entrusts to*

*them for use as his servants.* This is true although the acts of the servant while upon the premises or in the use of the master's chattels are done wholly for the servant's own purposes and are, therefore, outside the course of the servant's employment and thus do not subject the master to liability under the rule of the law of Agency. On the other hand, *the master as such is under no peculiar duty to control the conduct of his servant while he is outside of the master's premises, unless the servant is at the same time using a chattel entrusted to him as servant.* Thus, a factory owner is required to exercise his authority as master to prevent his servants, while in the factory yard during the lunch hour, from indulging in games involving an unreasonable risk of harm to persons outside the factory premises. He is not required, however, to exercise any control over the actions of his employees while on the public streets or in a neighboring restaurant during the lunch interval, even though the fact that they are his servants may give him the power to control their actions by threatening to dismiss them from his employment if they persist.

Comment b., Restatement (Second) Torts § 317 (emphasis added). For purposes of this Motion, the Court will assume without deciding that MasTec had the ability, and in fact did threaten (through company policy), dismissal of any employee who drove company vehicles (even though not entrusted to them for use as an employee) while unlicensed and on the company's no-drive list.

## 2. Knowledge of Necessity and Opportunity for Exercising Control

In order to prevail on a duty to control claim, a plaintiff must also show foreseeability in that MasTec "knew or should have known of the necessity and opportunity for exercising such control." *See Iverson v. NPC Int'l, Inc.*, 801 N.W.2d 275, 281 (S.D. 2011) (cleaned up) (quoting Restatement (Second) of Torts, § 317(b)(ii)). South Dakota courts use the "totality of circumstances test" in evaluating foreseeability. *Kirlin*, 758 N.W.2d at 451.

Liability is not contingent upon foreseeability of the "extent of the harm or the manner in which it occurred." This means the exact harm need not be foreseeable. Rather, the harm need only be within the class of reasonably foreseeable hazards that the duty exists to prevent.

*Id.* (quoting *State Auto Ins. Co.'s v. B.N.C.*, 702 N.W.2d 379, 388-89 (S.D. 2005)). Foreseeability in defining the boundaries of a duty is always a question of law." *Smith ex rel. Ross v. Lagow Constr. & Dev. Co.,* 642 N.W.2d 187, 192 (S.D. 2005).

As the Court has already stated in its analysis of Plaintiff's negligent supervision claim, Botello's conduct was not within the class of reasonably foreseeable hazards from which MasTec

had a duty to protect Plaintiff. Accordingly, the Court concludes as a matter of law that MasTec had no duty to exercise control over Botello while he was off premises and off duty to make sure he did not drive MasTec vehicles while unlicensed and intoxicated.

### (c) Special Circumstances Doctrine

Plaintiff urges the Court to adopt the "special circumstances" doctrine. Although generally one who leaves keys inside a vehicle is not liable to a person injured by the negligence of a thief who steals it, some jurisdictions have applied the "special circumstances doctrine" to create an exception to the general rule. *Keith v. Valdez*, 934 P.2d 897, 901 (Colo. App. 1997). Under the "special circumstances doctrine," a court may impose a duty of care upon the owner of a vehicle who leaves keys inside the vehicle, if the court finds that under the circumstances, theft of the vehicle and subsequent negligent driving were foreseeable. *Id.* at 901-02.

Plaintiff argues that under the special circumstances doctrine, MasTec, as the owner of the vehicle, had a duty to protect Plaintiff from the actions of unauthorized persons, such as Botello, who appropriate MasTec automobiles[1]. Plaintiff argues that "the facts demonstrate that it was foreseeable that [Botello] would take a vehicle and get into a collision, where Danny left the keys in the vehicle and gave Victor permission to use the vehicle." (Doc. 18 at 148).

Plaintiff acknowledges in her brief that the South Dakota Supreme Court has not addressed the duty owed by the owner of the vehicle to persons injured by the negligence of a thief who steals it. (Doc. 18 at 148). "Absent controlling [state supreme court] authority, a federal court sitting in diversity must attempt to predict what that court would decide if it were to address the issue." *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011).

The "special circumstances" doctrine has been adopted only by a minority of jurisdictions. Plaintiff points to no "'relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data'" that suggests the South Dakota Supreme Court would likely adopt the "special circumstances" doctrine. *Id.* (quoting *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1268 (8th Cir. 1997)). Summary judgment is therefore granted in favor of MasTec under this theory of liability.

---

[1] Botello pleaded guilty to unauthorized use of a motor vehicle—a misdemeanor under Nebraska law.

Accordingly, it is hereby ORDERED that MasTec's Motion for Summary Judgment (Doc. 14) is GRANTED.

Dated this 30th day of March, 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

27